**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| LM INSURANCE CORPORATION, | HONORABLE KAREN M. WILLIAMS |
| Plaintiff, | |
| v. | Civil Action |
| | No. 24-05932 (KMW-EAP) |
| FAVOR SERVICES INC. and NOVIE PRAMUDITA, | |
| Defendants. | **OPINION** |

APPEARANCES:

Sean P. Hvisdas, Esq.
Anthony J. Golowski II, Esq.
**GOLDBERG SEGALLA LLP**
1700 Market Street, Ste. 3232
Philadelphia, PA 19103

*Counsel for Plaintiff LM Insurance Corporation*

Roger J. Harrington, Esq.
**ELLIOTT GREENLEAF & SIEDZIKOWSKI**
925 Harvest Drive, Suite 300
Blue Bell, PA 19422

*Counsel for Defendants Favor Services Inc. and Novie Pramudita*

**WILLIAMS, District Judge:**

## I.      INTRODUCTION

Before the Court is Defendants Favor Services Inc. ("Favor") and Novie Pramudita's ("Pramudita," collectively, "Defendants") Motion to Dismiss ("MTD," Dkt. No. 27) Plaintiff LM Insurance Corporation's ("Plaintiff") Amended Complaint (Dkt. No. 25). Plaintiff opposes the motion. (Dkt. No. 28.) Defendants replied. (Dkt. No. 29.) The Court, having considered the Parties' submissions without oral argument pursuant to L.Civ.R. 78.1(b), **GRANTS in part** and **DENIES in part** Defendants' MTD. The Court further **GRANTS** Plaintiff's request for leave to amend to correct the deficiencies identified herein.

## II.     FACTUAL BACKGROUND[1]

### a.  The 2019 Application and Initial Representations.

In December 2019, Favor submitted an application ("Application") for workers' compensation insurance through New Jersey's Involuntary Market for Worker's Compensation Insurance Plan (the "Plan"). (Amended Complaint ("AC") ¶ 24, Ex. C, Dkt. No. 25.) The Application included a certification which states:

> I HEREBY ACKNOWLEDGE THAT I HAVE FULLY READ THE
> INSTRUCTIONS RELATED TO THE COMPLETION OF THIS
> APPLICATION AS WELL AS ABOVE STATEMENTS AND
> CERTIFY THAT THE FOREGOING STATEMENTS AND
> INFORMATION CONTAINED HEREIN ARE TRUE AND
> ACCURATE TO THE BEST OF MY KNOWLEDGE AND, THAT
> I, AS AN OWNER/OFFICER, AM FULLY AUTHORIZED TO
> SIGN THIS FORM ON BEHALF OF THE INSURED, AND TO
> BIND THE INSURED. I UNDERSTAND THAT UNDER NEW
> JERSEY CRIMINAL LAW, INSURANCE FRAUD IS
> PUNISHABLE BY UP TO TEN (10) YEARS IMPRISONMENT
> AND FINES UP TO $150,000, AS WELL AS CIVIL PENALTIES

---

[1] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). The facts are taken from Plaintiffs' Amended Complaint and the exhibits attached thereto.

AUTHORIZED BY THE NEW JERSEY INSURANCE FRAUD PREVENTION ACT.

I UNDERSTAND THAT THE INFORMATION PROVIDED HEREIN IS MATERIAL AND WILL BE RELIED UPON BY THE COMPENSATION RATING & INSPECTION BUREAU, AS WELL AS BY THE DESIGNATED INSURANCE COMPANY, TO PROVIDE THE REQUESTED INSURANCE AND WILL BE USED TO CALCULATE MY PRELIMINARY WORKERS' COMPENSATION PREMIUM.

I ALSO UNDERSTAND THAT I HAVE A CONTINUING OBLIGATION TO PROMPTLY NOTIFY THE DESIGNATED CARRIER OF CHANGES IN:

- THE KIND OF WORK CONDUCTED BY THE BUSINESS

- THE SIZE OF AND/OR CLASSIFICATION OF OUR WORKFORCE

- THE AMOUNT OF REMUNERATION

- THE BUSINESS OWNERSHIP OR BUSINESS STRUCTURE

- CHANGE OF MAILING ADDRESS AND/OR PRINCIPAL PHYSICAL LOCATION.

I AGREE TO MAKE AVAILABLE ALL RECORDS NECESSARY FOR A CARRIER OR RATING BUREAU AUDIT AND TO PERMIT THE AUDITOR OR OTHER REPRESENTATIVE TO MAKE A PHYSICAL INSPECTION OF OUR PREMISES/OPERATIONS. I UNDERSTAND THAT FAILURE TO DO THIS MAY RESULT IN TERMINATION OF THE COVERAGE PROVIDED, CIVIL PENALTIES AND/OR CRIMINAL PROSECUTION.

IT IS FURTHER UNDERSTOOD THAT IF THERE IS WORKERS' COMPENSATION LIABILITY UNDER THE LAW(S) OF ANY OTHER STATE(S), OTHER ARRANGEMENTS MUST BE MADE. IN ACCORDANCE WITH NEW JERSEY LAW, IF I/WE INTENTIONALLY UNDERSTATE OR CONCEAL, REMUNERATION, OR MISREPRESENT OR CONCEAL EMPLOYEE DUTIES, SO AS TO AVOID PROPER CLASSIFICATION FOR PREMIUM CALCULATIONS, OR MISREPRESENT OR CONCEAL INFORMATION PERTINENT TO THE COMPUTATION AND APPLICATION OF AN EXPERIENCE RATING MODIFICATION FACTOR, I/WE SHALL BE SUBJECT TO

3

CIVIL PENALTIES AUTHORIZED BY THE NEW JERSEY INSURANCE FRAUD PREVENTION ACT, AS WELL AS PROSECUTION UNDER THE CRIMINAL LAWS OF THIS STATE.

(*Id.*, Ex. C at 4, Dkt. No. 25 at 78.) Beneath the Certification are two fields, labeled "Print Name and Title," and "Signature," which both contain the typed name "Novie Pramudita." (*Id.*) Plaintiff alleges that this reflects that Pramudita executed, certified, and signed the application electronically with this typed signature. (*Id.*, ¶¶ 24, 26.) The Application represented, among other things, that Favor did not use subcontractors. (*Id.*, Ex. C, Dkt. No. 25 at 76.) Plaintiff alleges that if an insured uses subcontractors who are not adequately insured during the insurer's policy period, the Plan entitles insurers, such as Plaintiff, to charge premiums based on the amounts insured, like Favor, paid to those underinsured or uninsured subcontractors. (*Id.*, ¶ 76.) The Application also contained payroll information for Favor's employees and classified Favor's business operations within certain premium-bearing class codes. (*Id.*, Ex. C, Dkt. No. 25 at 77.)

Plaintiff alleges these representations were material because, under the Plan and the New Jersey Workers' Compensation Manual ("Manual"), insureds must fully disclose business operations, employee remuneration, and subcontractor exposure, both at inception and on a continuing basis. (*Id.*, ¶¶ 206-209; *see* Ex. A, Dkt. No. 25 at 49.) The Plan also requires insureds to cooperate in all audits and to provide complete records reflecting payroll, payments to subcontractors, and certificates of insurance for subcontractors who maintain their own coverage. (*Id.*, ¶¶ 206-209; *see* Ex. C, Dkt. No. 25 at 78.)

**b. The 2020-2022 Audits and Alleged Incomplete Disclosures.**

Plaintiff alleges that during several audits conducted between 2020 and 2022, Favor— principally through Pramudita—failed to disclose accurate payroll, failed to disclose or produce documentation identifying subcontractors, and repeatedly denied paying cash wages. (*Id.*, ¶¶ 43-

4

117.) Specifically, Plaintiff alleges that it conducted: (1) a preliminary audit of the 019 Policy ("019 Preliminary Audit") on March 10, 2020, (*id.*, ¶ 44); (2) an audit of the 019 Policy ("019 Audit") on March 22, 2021, (*id.*, ¶ 63); (3) an audit of the 010 Policy ("010 Audit") between January 14, 2022 and February 17, 2022, (*id.*, ¶ 79); and an audit of the 011 Policy on April 5, 2022, (*id.*, ¶ 111). Plaintiff alleges that throughout these audits, it made multiple requests for payroll journals, job-cost records, 1099s, cancelled checks, contracts, and Certificates of Insurance ("COIs") for subcontractors, but Defendants did not produce complete records. (*Id.*, ¶¶ 43-117.)

Although the audits revealed some information suggesting that Defendant utilized subcontractors during Plaintiff's early review of Defendant's tax submissions—such as Profit & Loss ("P&L") statements and 1099 information—Plaintiff asserts these disclosures were incomplete and inconsistent with Favor's repeated statements during audits that subcontractor usage was limited and that any subcontractors used were adequately insured. For example, Plaintiff alleges that despite its request for subcontractor COIs during the 019 Preliminary Audit, Defendants did not inform Plaintiff's auditors that Favor used subcontractors. (*Id.*, ¶¶ 46, 56.) Plaintiff alleges that it was not until the 019 Policy Audit that Favor informed Plaintiff's auditor that it utilized one subcontractor to transport its workers. (*Id.*, ¶ 67.) Plaintiff alleges that, in contrast with statements Defendants made and certified in the Application, Favor's 2020 tax return Form 1120, which it obtained during the 019 Policy Audit, identified that Favor had $4.7 million in subcontractor expenses. (*Id.*, ¶ 73.)

Plaintiff further alleges that Defendants underreported Favor's payroll and subcontractor expenses during the 019 Audit. (*Id.*, ¶ 78.) Plaintiff avers that a P&L statement that Favor's accountant, at Pramudita's direction, provided to Plaintiff's auditor as part of the 010 Audit identified approximately $4.7 million in subcontractor expenses. (*Id.*, ¶ 93.) Plaintiff's auditor

asked Favor to provide details and supporting records related to the $4.7 million in subcontractor expenses, but Defendants did not provide those records. (*Id.*, ¶¶ 94-95.) During the 011 Audit Favor produced financial records which identified, contrary to Defendants' representations in the Application, that Favor incurred approximately $7.7 million in subcontractor expenses in 2021. (*Id.*, ¶ 101.)

Plaintiff alleges that "Pramudita knowingly failed to cooperate with LM during the LM Policies' audits because Pramudita knew that Favor's financial records would allow LM to learn that Favor received payments for work performed by Favor's employees and/or subcontractors and/or workers, and that Favor did not otherwise disclose that information performing that work in an effort to avoid paying premium on those wages or amounts." (*Id.*, ¶ 162.) Plaintiff also alleges that Defendants continued to report payroll amounts significantly lower than those later uncovered and represented that they did not pay workers in cash, despite Pramudita's statements in the Application and audits that Favor did not pay workers in cash. (*Id.*, ¶¶ 57, 153-55, 161.) Had Defendants reported the cash payments, Plaintiff would have charged greater premiums based on the higher payroll and number of workers. (*Id.*, ¶ 156.) Plaintiff further alleges that it was forced to estimate a partial policy premium and was unable to calculate Defendants' final policy premium based on its actual exposure because Defendants failed to fully comply with the audits and provide all necessary information. (*Id.*, ¶ 96.) Based on its audits, Plaintiff estimates that Defendants owe it at least $300,000 in premiums. (*Id.*, ¶¶ 110, 174.)

Plaintiff alleges that if Defendants used subcontractors who are not adequately insured during the insurer's policy period, Plaintiff would be entitled to charge premiums based on amounts Favor paid to those underinsured or uninsured subcontractors. (*Id.*, ¶ 76.) Nowhere in the Amended Complaint, however, does Plaintiff allege any of Defendants' subcontractors were

uninsured or underinsured, let alone identify which subcontractors that form the basis of Plaintiff's knowledge. (*See generally id.*) Nor does Plaintiff allege that Defendants knew that any of its subcontractors were uninsured. (*Id.*) In its Opposition to the present Motion, Plaintiff submits information related to one subcontractor—Sopha Services, LLC—indicating that it was uninsured. (*See* Opp. Br. at 4, Dkt. No. 28 (quoting Opp. Ex. B-Audit Exhibit for Policy 010.)) Yet, Plaintiff does not assert whether it obtained this information from Defendants. (*Id.*) Moreover, these assertions, while supported by an exhibit to Plaintiff's Opposition, are not alleged in Plaintiff's Complaint. (*See id.*; Opp. Br. at 4.)

### III.    LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

A district court may consider allegations in the complaint; matters of public record, orders, and exhibits attached to the complaint are taken into consideration. *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 551 (D.N.J. 2013) (citing *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir.1990)). Thus, generally, a district court cannot consider matters that are extraneous to the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, one exception is that courts may consider documents integral to or explicitly relied upon in the complaint without converting the motion to dismiss to one for summary judgment. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426).

To sufficiently allege a fraud claim, a plaintiff's complaint must comport with the Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), which states that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." *Id.* Plaintiffs must accompany their legal arguments with "factual allegations that make their theoretically viable claim plausible." *In re Burlington*, 114 F.3d at 1418 (3d Cir. 1997). To satisfy Rule 9(b)'s particularity requirement a plaintiff must: "(1) state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged; and (2) plead or allege the precise date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). "Rule 9(b) mandates for

all averments of fraud that parties plead the circumstances constituting fraud with specificity." *The Paul Revere Life Ins. Co. v. Fink*, No. 07-CV-16, 2007 WL 3430511, at *2 (D.N.J. Nov. 14, 2007). "This requires the party alleging fraud to specify, *inter alia*, what misrepresentations were made, which party made them, and how these misrepresentations were fraudulent." *Id.* (citing *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)).

## IV.    DISCUSSION

Defendants move to dismiss all counts of Plaintiffs' Amended Complaint. (Dkt. No. 27.) The Court will address each count in turn.

### a. Breach of Contract (Count I)

The elements of a breach of contract claim are "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Defendants argue that Plaintiff has failed to adequately plead a breach of contract claim because Plaintiff's Amended Complaint does not allege that Defendant used any uninsured or underinsured subcontractors, which is a condition precedent to establishing the element of damages for a breach of contract claim based on underpaid premiums relative to Defendant's overall exposure. (MTD Br. at 26-27.) Defendant also argues that Plaintiff has inadequately plead who, when, or how many employees were allegedly paid in cash to support a breach of contract claim for an additional premium because of underreported payroll. (*Id.* at 27-29.)

Plaintiff counters that while premiums relating to underinsured or uninsured subcontractors may be one measure of its damages, it has demonstrated that at least one subcontractor, Sopha Services, LLC, was uninsured. (Opp. Br. at 22.) Plaintiff further asserts that Defendants' failure to report significant cash renumerations paid to its employees and failure to identify certain

9

employees during audit periods preceding the 011 Audit further support its breach of contract claim, independent of whether Defendants' subcontractors were insured. (*Id.*)

Here, Defendants are correct that Plaintiff may not use its Opposition to further amend the Complaint. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). The Court finds that Plaintiff has not sufficiently alleged that Defendant hired uninsured or underinsured subcontractors, which Plaintiff concedes is a condition precedent to pleading damages in the form of underpaid premiums relating to the subcontractors. (*See* AC ¶ 76.) However, the Court agrees with Plaintiff that this is not the only ground supporting its breach of contract claim. The Court finds that Plaintiff's allegations concerning Defendants' failure to report significant cash renumerations and failure to identify all employees and their classifications before the 011 Audit are sufficient to support Plaintiff's breach of contract claims.

Accordingly, Defendants' Motion to Dismiss Count I of Plaintiff's Amended Complaint is **GRANTED in part** and **DENIED in part,** as follows:  Plaintiff's breach of contract claim as it relates to Defendants' alleged underpayment of premiums arising from its use of underinsured or uninsured subcontractors is dismissed without prejudice, but the remainder of Count I survives.[2] The Court will further permit Plaintiff to replead its claims with respect to Defendants' use of any underinsured or uninsured subcontractors and Defendants' knowledge thereof.

### b. Unjust Enrichment and Quantum Meruit (Counts II and III)

Defendants argue that Plaintiff's claims for unjust enrichment (Count II) and quantum meruit (Count III) should also be dismissed for the same reasons as Count I for breach of contact,

---

[2] "Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a court may dismiss any part of a complaint for 'failure to state a claim upon which relief can be granted.'" *Damiani v. W. Deptford Twp.*, No. CIV. A. 07-2884 JEI, 2008 WL 656041, at *2 (D.N.J. Mar. 7, 2008) (quoting Fed. R. Civ. P. 12(b)(6)).

*i.e.,* that Plaintiff fails to aver Defendants used subcontractors who were uninsured or underinsured. (MTD Br. at 26, n.12.) For the reasons discussed with respect to Count I for breach of contract, *supra*, Defendant's Motion to Dismiss Counts II and III is **GRANTED in part** and **DENIED in part,** subject to the same limitations. Plaintiff may replead these counts accordingly.

### c.   Workers' Compensation Fraud Statute (Count IV)

Under the New Jersey Workers' Compensation Act ("WCA"), N.J.S.A. 32:15-1 *et seq.*, which includes the Workers' Compensation Fraud Statute ("WCSF"), it is unlawful to knowingly make false statements or fail to disclose material facts to obtain insurance benefits, including reduced premiums. N.J.S.A. 34:15-57.4. The WCA is a remedial statute subject to "liberal construction." *Liberty Ins. Corp. v. Techdan, LLC*, 253 N.J. 87, 110 (2023) (quoting *Cruz v. Cent. Jersey Landscaping, Inc.*, 195 N.J. 33, 42 (2008)).

Plaintiff's Amended Complaint alleges that Defendants knowingly misrepresented subcontractor exposure and cash wages throughout the audits and concealed uninsured subcontractor labor through both the Application and in response to subsequent audits. (AC ¶¶ 43-168.) Defendants argue that Pramudita did not sign the Application and thus cannot be liable for violating the WCFS. (MTD Br. at 19.) For purposes of a motion to dismiss, however, the Court must accept as true all factual allegations in Plaintiff's Amended Complaint. *See Phillips*, 515 F.3d at 228. Here, Plaintiff alleges that Pramudita electronically signed the Application. (AC ¶¶ 24, 26.) Moreover, the Application contains a certification on behalf of Pramudita representing to Plaintiff that Pramudita certifies to the truthfulness of the representations therein on penalty of perjury. (*See id.*, Ex. C at 4, Dkt. No. 25 at 78.) Furthermore, the Amended Complaint is rife with allegations that Pramudita personally made misleading or false representations, statements, or submissions to assist Favor in avoiding its insurance premiums. (*See* AC ¶¶ 43-168.)

11

Defendants also argue that the WCFS does not apply to Pramudita because she "was never expected or required to pay any premiums whatsoever." (MTD Br. at 19.) Yet Defendants do not cite to any portion of the WCFS or case law interpreting it that suggests a person who makes false or misleading statements is exempt from the WCFS unless they are personally responsible for paying the premiums that benefitted from the fraud. *See* N.J.S.A. 34:15-57.4. The Court finds that Plaintiff has satisfied Fed. R. Civ. P. 9(b) with respect to Count IV because Plaintiff has sufficiently plead that Defendants made material misrepresentations to obtain lower premiums. Plaintiff alleges who made the statements (Pramudita), when (during the Application and audit cycle), and what was omitted or misrepresented (cash wages, payroll records, and subcontractor exposure).

Accordingly, Defendants' Motion to Dismiss Count IV is **DENIED**.

### d. IFPA (Count V)

The Insurance Fraud Prevention Act ("IFPA") states in relevant part:

A person or a practitioner violates this act if he:

> (1) Presents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or

> . . . .

> (4) Prepares or makes any written or oral statement, intended to be presented to any insurance company or producer for the purpose of obtaining: . . . (b) an insurance policy, knowing that the statement contains any false or misleading information concerning any fact or thing material to an insurance application or contract . . . .

N.J.S.A. 17:33A-4(a)(1) and (4)(b). N.J.S.A. 17:33A-4(c) further provides that: "A person or practitioner violates this act if, due to the assistance, conspiracy or urging of any person or practitioner, he knowingly benefits, directly or indirectly, from the proceeds derived from a

12

violation of this act." Courts have recognized that avoiding premium payments constitutes an insurance "benefit" pursuant to the IFPA. *See Baglivo v. Mut. of Omaha Ins. Co.*, No. 20-15605, 2025 WL 2976657, at *14 (D.N.J. Oct. 22, 2025). "Unlike common law fraud, proof of fraud under the IFPA does not require proof of reliance on the false statement or resultant damages, nor proof of intent to deceive." *Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 493 (D.N.J. 2018) (quoting *Lincoln Nat'l Life Ins. Co. v. Schwarz*, No. 9-3361, 2010 WL 3283550, at *16 (D.N.J. Aug. 18, 2010)).

Materiality, for purposes of the IFPA, turns on whether a misrepresentation would "naturally and reasonably influence[ ] the judgment of [an] underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium." *Paul Revere Life Ins. Co. v. Haas*, 137 N.J. 190, 209 (1994) (quoting *Massachusetts Mut. Life Ins. Co. v. Manzo*, 122 N.J. 104 (1991)). "Misrepresentations are 'equally material if they may be said to have been calculated either to discourage, mislead or deflect the company's investigation in any area that might seem to the company, at that time, a relevant or productive area to investigate.'" *Baglivo*, 2025 WL 2976657, at *14 (quoting *Longobardi v. Chubb Ins. Co. of New Jersey*, 121 N.J. 530, 541 (1990)).

Here, Defendants arguments as to why Count V should be dismissed as to Pramudita mirror its position as to Count IV: (1) because Pramudita did not sign the Application in wet ink, Defendants assert those statements cannot be attributed to her; and (2) because Pramudita's company, Favor, was the policyholder, rather than Pramudita in her personal capacity, she cannot be held liable for violating the IFPA. (MTD Br. at 21-22.) Although Plaintiff has not alleged Defendants subcontractors were underinsured or uninsured, proof of damages is not required to support an IFPA claim. *See Citizens United Reciprocal Exch.*, 321 F. Supp. 3d at 493.

As discussed with respect to Count IV, *supra*, Plaintiff has sufficiently alleged that Pramudita signed the Application, which contained material misrepresentations regarding payroll, subcontractor utilization, and cash wages for the purpose of obtaining the benefit of a lower premium. (AC ¶¶ 19-37, 76, 162.) Plaintiff further alleges that Pramudita made misrepresentations relating to the subsequent audits. (*See id.* ¶¶ 43-168); *see Baglivo*, 2025 WL 2976657, at *14. These allegations sufficiently plead a claim against both Defendants for violation of the IFPA for purposes of Fed. R. Civ. P. 9(b).

Accordingly, Defendants' Motion to Dismiss Count V is **DENIED**.

### e.  Common Law Fraud (Count VI)

Defendants argue that Count VI for Common Law Fraud should be dismissed because (1) it fails to sufficiently plead all the required elements; and (2) it is barred by the Economic Loss Doctrine. (MTD Br. at 22-25.) To state a claim for common law fraud under New Jersey law, Plaintiff must plead: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172–73 (2005) (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)).

Under New Jersey law, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Co.,* 66 F.3d 604, 618 (3d Cir. 1995)); *see also Dean v. Barrett Homes, Inc.*, 204 N.J. 286, 296-97 (2010)). "Dismissal is appropriate under the economic loss doctrine where a party fails 'to allege any facts to support [its] claim beyond those alleged to

14

support [its] breach of contract claim.'" *FFF Enters., Inc. v. Rising Pharma Holdings, Inc.*, No. 23-20837, 2024 WL 4972968, at \*11 (D.N.J. Dec. 4, 2024) (quoting *Lab'y Corp. of Am. v. Fusion Diagnostics Lab'ys, LLC*, No. A-1100-18T4, 2020 WL 476882, at \*5 (N.J. Super. Ct. App. Div. Jan. 30, 2020)).

New Jersey law permits a common law fraud claim to proceed with a breach of contract claim where it is based on pre-contractual misrepresentations or where the contract is fraudulently induced. *See id.* "'[T]he distinction between fraud in the inducement and fraud in the performance of a contract' is 'the conceptual distinction between a misrepresentation of a statement of intent at the time of contracting, which then induces detrimental reliance on the part of the promisee, and *the subsequent failure of the promisor to do what he has promised*.'" *Id.* (quoting *JD James Constr., LLC v. PDP Landscaping, LLC*, No. A-4903-18T3, 2020 WL 5587439, at \*6 (N.J. Sup. Ct. App. Div. Sept. 18, 2020)). Thus, the plaintiff must allege the fraud breached a duty that is independent of the parties' contractual relationship. *See id.* at \*12 (noting "[w]hen a contractual breach results only in economic losses, the pecuniary injury may fall within the scope of parties' precontractual expectations and their allocation of risks, and it is less likely to implicate the breach of a tort duty independent of their contractual rights and obligations."); *see also Bracco Diagnostics, Inc.*, 226 F. Supp. 2d at 562 (noting the "critical issue" under the economic loss doctrine is "whether the allegedly tortious conduct is extraneous to the contract"); *Int'l Minerals & Mining Corp. v. Citicorp N.A., Inc.*, 736 F. Supp. 587, 597 (D.N.J. 1990) ("It has . . . consistently been held that an independent tort action is not cognizable where there is no duty owed to the plaintiff other than the duty arising out of the contract itself.").

Here, Plaintiff's common law fraud claim is predicated on the same facts as its breach of contract claim: Defendants' alleged failures to disclose payroll and subcontractor exposure and

cooperate with its audits resulted in Favor's underpayment of premiums to Plaintiff. (AC ¶¶ 9-18, 24, 169-175, 216-220.) The Amended Complaint alleges that these obligations arise out of the Parties' contractual relationship and Plaintiffs seek payment of the premium owed pursuant to that relationship. (*Id.* ¶¶ 9-18, 24, 41-42, 174-75.) Plaintiff does not allege common law fraud relating to any duties independent of the Parties' contractual relationship.[3] (*See generally id.*) Thus, the Court finds that the economic loss doctrine bars Count VI for common law fraud because Plaintiff alleges a tort that is not extraneous to the contract. *See Bracco Diagnostics, Inc.*, 226 F. Supp. 2d at 562; *Int'l Minerals & Mining Corp.*, 736 F. Supp. at 597; *FFF Enters., Inc.*, 2024 WL 4972968, at *11.

Accordingly, the Court will **GRANT** Defendants' Motion to Dismiss Count VI **without prejudice**, allowing Plaintiff to replead only if it can allege a truly independent duty that Defendants breached which does not arise out the Parties' contractual relationship.

## V.     CONCLUSION

For all the foregoing reasons, Defendants' Motion to Dismiss (Dkt. No. 27) is **GRANTED in part** and **DENIED in part**. An Order consistent with this Opinion will be entered.

Dated: December ___, 2025

_____
KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[3] Although Plaintiff adequately alleges statutory fraud arising from Defendants' violation of the WCFS (Count IV) and IFPA (Count V), those claims arise from an alleged violation of Defendants' statutory duties under those respective statutes. Conversely, Plaintiff's common law fraud claim, a tort, arises out of the Parties' contractual relationship, seeks damages governed by that relationship, and is not based on an independent duty that Defendants owed Plaintiff. *See Zurich Am. Ins. Co. v. Asphalt Paving Sys., Inc.*, No. 22-01535, 2023 WL 179962, at *5 (D.N.J. Jan. 13, 2023) (finding economic loss doctrine barred common law fraud claim arising from breach of contractual obligations but not statutory fraud claims arising from duties extraneous to contract). Accordingly, the economic loss doctrine does not bar Counts IV and V for statutory fraud.